COON *v.* WILLIAMS.

1. AUTOMOBILES—OPERATION TEST—EVIDENCE.

Admission in evidence of results of certain driving tests conducted under the direction of plaintiff's counsel months after accident resulting in death of plaintiff's decedent, whereby different automobiles, under different circumstances, at or near intersection in question, were driven at various speeds, slowed down, and stopped, with the admonition to jury that such tests could be disregarded if jury found that conditions were different at the time of the collision from those prevailing at the time of the tests *held,* not reversible error.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Automobiles and Highway Traffic § 978 *et seq.*
[2–4] 41 Am Jur, Pleading § 335 *et seq.*
53 Am Jur, Trial § 382 *et seq.*
[5] 53 Am Jur, Trial § 455.
[6, 10] 8 Am Jur 2d, Automobiles and Highway Traffic § 488.
[7] 8 Am Jur 2d, Automobiles and Highway Traffic § 899.
[8] 8 Am Jur 2d, Automobiles and Highway Traffic § 507.
[9] 8 Am Jur 2d, Automobiles and Highway Traffic § 500.
[11] 8 Am Jur 2d, Automobiles and Highway Traffic § 524 *et seq.*
[12, 17] 5 Am Jur 2d, Appeal and Error § 894.
[13] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1022, 1023, 1031.
[14] 8 Am Jur 2d, Automobiles and Highway Traffic § 1030.
Instructions on sudden emergency in motor vehicle cases. 80 ALR2d 5.
[15] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 700, 739.
[16] 5 Am Jur 2d, Appeal and Error § 891.
[18] 4 Am Jur 2d, Appeal and Error § 537.

2. Judgment—Pleading—Opening Statement.

A motion for judgment may be granted where, from the opening statement and the pleadings, it is clear that the plaintiff would not be entitled to judgment even though the facts proposed for proof were conceded and the inferences most favorable to plaintiff were drawn.

3. Automobiles—Pleading—Opening Statement—Motion for Judgment—Gross Negligence.

Defendant's motion for judgment following opening statement by plaintiff was properly denied, where it appeared from pleading and opening statement that defendant host motorist entered the intersection in question against a stop sign and proceeded into the favored highway at a high rate of speed knowing his brakes were faulty, and struck a vehicle driven by another defendant, since such conduct might properly be regarded as gross negligence or wilful and wanton misconduct (CLS 1961, § 257.401).

4. Judgment—Motion for Judgment—Sufficiency of Evidence—Negligence—Wilful and Wanton Misconduct—Question for Jury.

Whether a given motion for judgment tests the sufficiency of evidence as proving ordinary negligence (or disproving contributory negligence) on the one hand, or as proving wilful and wanton misconduct under the statute on the other, the doubtful case in each instance calls for jury instruction and jury verdict, rather than directed verdict (CLS 1961, § 257-.401).

5. Trial—Opening Statement—Discretion of Court.

What constitutes a fair opening statement is largely a matter within the discretion of the trial court.

6. Automobiles—Guest Passenger—Elements of Wilful and Wanton Misconduct.

The elements of wilful and wanton misconduct under the guest passenger act, are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (CLS 1961, § 257.401).

7. Same—Guest Passengers—Gross Negligence—Wilful and Wanton Misconduct—Evidence.

Gross negligence or wilful and wanton misconduct within the guest passenger act, must be shown by plaintiff (CLS 1961, § 257.401).

8. Same—Excessive Speed—Gross Negligence—Wilful and Wanton Misconduct.

Excessive speed of itself is insufficient to impose liability under the guest passenger act but it may be considered in connection with other circumstances in determining whether the operator of the automobile was guilty of gross negligence or wilful and wanton misconduct (CLS 1961, § 257.401).

9. Same—Wilful and Wanton Misconduct—Question for Jury—Evidence—Speed—Through Street—Defective Brakes.

Evidence in action for injuries to plaintiff's decedent received at street intersection when defendants' car was driven at a high rate of speed into through street without stopping, and after host driver knew his brakes were defective, presented question of wilful and wanton misconduct of such defendant driver for jury, hence, denial of motion for directed verdict was proper (CLS 1961, § 257.401).

10. Negligence—Wilful and Wanton Misconduct.

There is no exact standard or measurement for determining where negligence ends and wilful or wanton misconduct begins, each case being decided on its own facts (CLS 1961, § 257.401).

11. Automobiles—Passengers—Assumption of Risk—Contributory Negligence.

Denial by trial court of motion for directed verdict on ground that plaintiff's decedent, a passenger, was guilty of "assumption of risk" *held*, proper, where, since there was no evidence in record to show that she knew defendant was operating his vehicle with defective brakes, or that she knew defendant had been warned that the vehicle was too dangerous to drive and that the brakes could fail at any time, she could not be charged with assumption of risk or with contributory negligence of equal degree (CLS 1961, § 257.401).

12. Appeal and Error—Examination of Instructions.

Selected portions of charge to jury, extracted from the whole, should not be subjected to scrutiny in a vacuum,

13. Automobiles—Guest    Passengers—Instruction—Proximate
Cause.

    Instruction in action for fatal injuries to defendants' guest pas-
       senger, wherein references to provisions of guest passenger act
       were quoted correctly *held*, not error, because certain references
       relative to causation were made disjunctively rather than con-
       junctively, where charge as a whole, including use of term
       *assumption of risk*, instead of contributory negligence of equal
       degree, did not misrepresent case to jury (CLS 1961, § 257-
       .401).

14. Same—Instructions—Sudden Emergency Brought About by
Own Negligence.

    An instruction upon the question of a sudden emergency con-
       fronting a motorist, which provides that if the emergency
       has been brought about by party's own negligence the sudden
       emergency doctrine was not applicable, was not erroneous.

15. Same—Speed—Defective Brakes—Sudden Emergency—Guest
Passengers.

    Driving an automobile at 55 to 70 miles per hour after knowl-
       edge of a leaky brake cylinder and a warning that the brakes
       could fail at any time, so as to collide with car on through
       street was not such an occasion as to permit defense of sudden
       emergency on part of host driver in action against him for
       death of his guest passenger (CLS 1961, § 257.401).

16. Appeal and Error—Instructions—Claims of Error—Objec-
tions.

    Defendants' numerous claims of error of the trial court jury
       charge *held*, not to constitute reversible error, where the record
       shows that defendants did not fully comply with the court
       rule in making objections to the jury instructions, stating
       specifically the matter to which they objected and the grounds
       of their objections, and a full reading of the entire court
       charge, which included both plaintiff's and defendants' requests
       to charge, attests that the same was fair to defendants (GCR
       1963, 516.2).

17. Same—Instructions—Charge Taken as a Whole.

    The fact that single sentences of charge to jury are objectionable
       when considered independently of the context does not consti-
       tute reversible error, where the charge of the court, taken as a
       whole, adequately states the law applicable to the litigation and
       clearly defines the issues.

18. SAME—REQUESTS TO CHARGE—INSTRUCTIONS.

Modification of requests to charge from language proffered, *held*, not error, where the subject matter of such requests as deserved to be given were adequately and correctly covered in the Court's charge to the jury.

Appeal from Jackson; Simpson (John), J. Submitted Division 2 May 10, 1966, at Lansing. (Docket No. 26.) Decided September 27, 1966. Rehearing denied November 28, 1966. Leave to appeal denied by Supreme Court February 28, 1967. See 378 Mich 752.

Declaration by Ruth M. Coon, administratrix of estate of Sharon Louise Coon, deceased, against Robert Claude Williams, Willis C. Williams and Ernest D. Simmons for injuries to decedent allegedly arising from an automobile accident. Directed verdict for defendant Simmons. Verdict and judgment for plaintiff against defendants Williams. Defendants Williams appeal. Affirmed.

*Navarre & Noble (Russell E. Noble, of counsel),* for plaintiff.

*Kelly, Kelly & Kelly (William J. Kelly, of counsel),* for defendants Williams.

McGREGOR, P. J. The death of the plaintiff's decedent was caused, according to the plaintiff, by the defendant automobile driver's gross negligence or wilful and wanton misconduct. Plaintiff's decedent was injured at or about noon, on November 27, 1960, when the automobile in which she was riding as a guest passenger,* driven by defendant Robert C. Williams, and owned by defendant Willis C. Williams, collided with a vehicle driven by defendant Ernest D. Simmons. Robert C. Williams and plain-

_____
* See CLS 1961, § 257.401 (Stat Ann 1960 Rev § 9.2101).—RE-PORTER.

tiff's decedent were engaged to be married. A week before the accident, defendant driver Williams had the automobile serviced and turned it over to plaintiff's decedent for her use while he went up north deer hunting. During the week that she had the automobile, she had some sort of difficulty or trouble with the brakes. On November 26th, defendant driver Williams and plaintiff's decedent got into his car and plaintiff's decedent told him of the trouble she had had with the brakes earlier in the week. He testified that he then drove at various speeds, up to 65 miles per hour, applied his brakes, and found them in working order. The following morning he drove into town and when he applied his brakes at a stop light he heard a scraping noise, which persisted, in the right front wheel brake. About one hour prior to this ride, and without any evidence that plaintiff's decedent had any knowledge thereof, there is evidence that defendant Robert C. Williams had been warned that there was brake fluid leaking from the brake cylinder and that his brakes "could go out" at any time. David K. Rule testified that on the morning of the collision, defendant driver Robert C. Williams brought his car into the service station owned and operated by Rule, and defendant Williams informed Rule that he was having a problem with his brakes; that he (Rule) examined defendant's car and discovered brake fluid on one of the wheels, and filled the master brake cylinder with brake fluid; that he informed defendant driver of this condition and advised him that he "shouldn't drive it that way, too dangerous". Defendant driver was also told by Mr. Rule that the leaking cylinder in his brake system should be fixed and that, with this condition existing, his brakes could go out at any time. This testimony was disputed by defendant.

There was evidence that, on the morning in question, defendant driver with plaintiff's decedent,

drove at speeds up to 70 miles per hour. The evidence showed that as the defendant driver approached the intersection with a favored road, on a slight downhill grade, he applied his brakes, and as he did so, the brake pedal went clear to the floor, his brakes suddenly failed to function; and that at this time he was less than a quarter of a mile from the intersection; that he attempted to "pump" his brakes; that he put his car into low gear in order to reduce the speed of the vehicle; that he did not use his hand brake nor turn off the highway onto the roadside; that he passed the stop sign and entered the intersection at 20 to 25 or more miles per hour, and collided with a vehicle being driven by defendant Simmons. Defendant Simmons testified that he approached the intersection at a speed of 45 miles per hour and reduced his speed to 40 miles per hour, and that the defendants Williams' car was being driven at 65 to 70 miles per hour at a point about 6 car lengths from the intersection. There was testimony that, after the collision, defendant driver Williams revealed to three people that he knew his brakes were faulty prior to the collision and that he had planned to have them repaired the following day. This was disputed by defendant driver.

The resultant collision threw plaintiff's decedent from the car, seriously injuring her, such injuries requiring her hospitalization and subsequent care at a convalescent home, where she remained until the time of her death, on July 29, 1962, during all of which time she was unconscious.

During the course of the trial, testimony was introduced of nonpersuasive results as to certain driving tests conducted under the direction of plaintiff's counsel months after the accident whereby different automobiles, under different circumstances, at or near the intersection in question, were driven at various speeds, slowed down, and stopped. While

the court denied a motion by defendant to strike this testimony, the court did admonish the jury with respect to the tests and told the jury that such tests could be disregarded if they found that conditions were different at the time of the collision from those prevailing at the time of the tests. The ruling of the trial court in this matter was not reversible error.

During the trial the court directed a verdict in favor of defendant Simmons, and no appeal was taken from that ruling.

Motions for directed verdict, made in behalf of the defendants Williams at the close of plaintiff's opening statement, at the close of her proofs, at the close of all the proofs, and after the jury verdict, were all denied by the trial court, as well as a motion for a new trial.

Judgment for $20,000 was entered in accordance with the jury verdict.

On appeal, defendants Williams contend that the trial court should have granted their motions for a directed verdict, especially the one at the conclusion of the plaintiff's opening statement, claiming that plaintiff's pleadings failed to show allegations of facts of sufficient evidentiary value to submit to a jury the issue that defendant driver was guilty of gross negligence or wilful and wanton misconduct.

Plaintiff's pleadings alleged that defendant Robert C. Williams entered the intersection in question against a stop sign, and proceeded into the favored highway. Plaintiff, in her reply to defendant Williams' answer, denied that such brakes failed "suddenly and without prior warning" and further denied that defendant had no knowledge of faulty brakes on said vehicle. Pleadings of all parties are replete with charges and denials of defendant driver's sudden brake failure to function with and without prior

warning to said defendant driver, which framed the real issue of liability.

"Such motion for judgment may be granted where, from the opening statement and the pleadings, it is clear that the plaintiff would not be entitled to judgment even though the facts proposed for proofs were conceded and the inferences most favorable to the plaintiff were drawn. See *Vida* v. *Miller Allied Industries, Inc.,* 347 Mich 257; *Ballinger* v. *Smith,* 328 Mich 23 (motion for a directed verdict in a jury case). From the facts recited, however, one might reasonably infer that the defendant drove deliberately at a speed involving grave and apparent danger, particularly in view of the condition of the road and the weather. Such conduct might properly be regarded as gross negligence or wilful and wanton misconduct." *Stevens* v. *Stevens* (1958), 355 Mich 363, 368.

The pleadings and the opening statement of plaintiff's counsel did put in issue the factual questions of whether defendant Robert C. Williams was guilty of gross negligence in wilfully and wantonly choosing to enter the intersection under the circumstances, or whether he was guilty of gross negligence or wilful and wanton misconduct in operating his car at a high rate of speed toward the intersection with a favored highway which required him to stop. It was the jury's prerogative to determine the question of gross negligence.

"Whether the given motion for instructed verdict tests the sufficiency of evidence as proving ordinary negligence (or disproving contributory negligence) on the one hand, or as proving wilful and wanton misconduct under the statute on the other, the doubtful case in each instance calls for jury instruction and jury verdict rather than a verdict by order of the court." *Tien* v. *Barkel* (1958), 351 Mich 276, 283.

"Opening statements. Before the introduction of any evidence, the attorney for the party who is to commence the evidence shall make a full and fair statement of his case and the facts he intends to prove. * * * The opening statements may be waived with the consent of the court and opposing counsel." GCR 1963, 507.1.

"What constitutes a fair opening statement is largely a matter within the discretion of the trial court." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 394.

"The principal question is whether under the evidence, when considered in a light most favorable to plaintiff, a jury question was presented. The elements of 'gross negligence or wilful and wanton misconduct' upon which defendant's liability is predicated under the guest act (CLS 1952, § 257.401 [Stat Ann 1952 Rev § 9.2101]) are set forth in *Titus* v. *Lonergan,* 322 Mich 112, 119:

"'(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.'

"We have said that under the circumstances of the case in order to establish gross negligence or wilful and wanton misconduct 'it is necessary for plaintiff to show that defendant continued to dri e in reckless disregard of known and dangerous conditions after knowledge of the same.' *Stolt* v. *Shalogian,* 326 Mich 435, 439. While excessive speed of itself is insufficient to impose liability under the guest act, it may be considered in connection with other circumstances in determining whether the operator of the automobile was guilty of gross negligence or wilful and wanton misconduct. *Titus* v. *Lonergan, supra.*" *Rinkevich* v. *Coeling* (1955),

344 Mich 493, 497, 498. (Quoted from Justice
Butzel's opinion for reversal, although the Supreme
Court affirmed by an equally divided court the trial
court's directed verdict for defendant.)

In the same case (page 509), in Justice Sharpe's
opinion (later approved by a majority of the court
in *Tien* v. *Barkel* (1958), 351 Mich 276) it was said
that "continued persistency in a course of conduct,
after ample warning, presented a question of fact
as to whether defendant was guilty of gross negli-
gence." The evidence in the light most favorable
to plaintiff at the close of her proofs shows that
defendant driver continued to drive his car after
being warned by plaintiff's decedent of her trouble
with defendant's car brakes the previous week, by
his hearing a scraping noise in one of the front
wheels, and by his being told about one hour before
the instant accident of leaking brake fluid on one of
his rear wheels that the car was too dangerous to
drive; that he continued to drive at speeds of up-
wards of 65 to 70 miles per hour, with knowledge of
this dangerous condition, down an incline towards
an intersection with a favored road where he was
legally required to stop; that at the time his brakes
failed, he put his car into low gear but failed to
take any other measure to avoid running the stop
sign, and collided with another car, causing the in-
jury and resulting death of his passenger, the plain-
tiff's decedent. The sum total of these factors is
of a different quality than those implying mere negli-
gence; here there is ordinary negligence plus a
wilful and wanton disregard for the safety of the
public and for plaintiff's decedent. The totality of
the grossly rash and foolhardy conduct on the part
of defendant Williams in conjunction with the rule
of favorable view made up a submissible case of
liability under the guest passenger statute. Su-

preme Court decisions are numerous which hold that, in doubtful cases, each such instance calls for jury instruction and jury verdict, rather than a verdict by order of the trial court.

"There is no exact standard or measurement by which we may determine where negligence ends and wilful or wanton misconduct begins, and each case must be decided on its own facts." *Goss* v. *Overton* (1934), 266 Mich 62, 65. (Quoted with approval in *Sorenson* v. *Wegert* [1942], 301 Mich 497, 506.)

Many decisions have been made by the Supreme Court involving the element of excessive speed coupled with other factors, such as a persistent refusal to heed warnings, which established a jury question as to the existence of gross negligence or wilful and wanton misconduct on the part of a defendant driver. Each guest-passenger case is *sui generis* in its factual circumstances. It is the duty of the jury to determine the credible facts from the disputed and conflicting evidence. The action of the trial court in denying defendants' motions for a directed verdict was not reversible error.

Defendants also contend that the trial court erred in failing to direct a verdict for them on the grounds that the plaintiff's decedent was guilty of what they termed "assumption of risk." Inasmuch as there was no evidence that plaintiff's decedent knew that defendant driver Williams was operating his automobile with a leaking brake cylinder, or that he had been warned by a Mr. Rule that his automobile was too dangerous to drive and that such brakes could fail at any time, she, the plaintiff's decedent, could not be charged with assumption of risk or any contributory negligence of equal degree. (See *Felgner* v. *Anderson* [1965], 375 Mich 23.)

Defendants further contend that the trial judge committed error in his charges to the jury and in

particular, when the court used the words "causing" and "contributed to" in the disjunctive rather than the conjunctive in referring to the guest-passenger act. The court read the guest-passenger statute to the jury twice and both times quoted correctly, using the conjunctive "and". The court used the words "assumption of risk" instead of contributory negligence of equal degree. Such use, when read with the entire jury charge, did not misrepresent the case to the jury, or the resulting issues. Select portions of the jury charge, extracted from the whole, however, should not be subjected to scrutiny in a vacuum. The court, in his charge to the jury, explained the meaning of (a) ordinary negligence, and (b) gross negligence or wilful and wanton misconduct, and (c) contributory negligence.

The defendants object to the court's instruction in defining sudden emergency. The defense of sudden emergency must fail if the sudden emergency results from the defendant's own negligence, such as driving his automobile at a speed of 55 to 70 miles per hour, after knowledge of a leaking brake cylinder and a warning that the brakes could fail at any time. *Gibbs* v. *Guild* (1952), 332 Mich 671, 681.

The record shows that the defendants did not fully comply with GCR 1963, 516.2 in making objections to the jury instructions, stating specifically the matter to which they objected and the grounds of their objection. While the defendants made numerous claims of error of the trial court jury charge (all of which we have considered), a full reading of the entire court charge, which covered the plaintiff's and the defendants' requests to charge, at tests that the same was fair to the defendants, and they cannot now complain of error which was not prejudicial to their cause. *Huffman* v. *First Baptist Church of Flushing* (1959), 355 Mich 437. The Supreme Court of this State has repeatedly upheld

the familiar rule that where the charge of the court, taken as a whole, adequately states the law applicable to the litigation and clearly defines the issues, the fact that single sentences are objectionable when considered independently of the context does not constitute reversible error.

The defendants further claim error on the part of the trial court in modifying some of the defendants' requests to charge. There is no rule requiring the trial court to give a jury charge in the manner requested by either litigant, so long as the trial court properly and fully states the applicable law.

The pleadings and the evidence, together with the charge of the court, made a properly submissible plaintiff's case as to defendants' liability under the statutes. The verdict of the jury was not contrary to the law nor to the great weight of the evidence.

Judgment of the trial court is affirmed, with costs to appellee.

BURNS and QUINN, JJ., concurred.